Dewey, J.
The action is for a legacy given by the will of Mary Morris, deceased, to the plaintiffs, in trust for The American Board of Commissioners for Foreign Missions, for the purpose of promoting the pious objects of said board. The proceedings are according to the course of the common law, and the action is given by statute.
The clause of the will, on which the action is founded, is in the words following ; [here his Honor recited the words of the bequest ; and added the substance of the agreement of the parties to the action, and proceeded.]
As there is no objection to the competency of the plaintiffs to take, and the words of the will are sufficient to vest the legacy legally in them ; they are entitled to retain their verdict, unless the bequest is void for some of the reasons suggested by the counsel for the defendant.
The objections are, 1. That it is against public policy. 2. That it is void for uncertainty, as to the object of the legacy, and of the persons who were intended to be the cestui que trust. 3. That a trust in this Commonwealth is ineffectual, there being no court to compel the execution of it. And, 4. That, as a bequest for pious and charitable uses, it is void by the provincial act of 28 Geo. 2, which enacts, that all such bequests or devises, which shall not be * made before the last sickness of the person making [ * 540 ] the same, or at least three months before the death of the testator, shall be utterly void and of no effect.
Whether the avails of this legacy might be more beneficially employed for similar purposes in our own country than in foreign parts, is not a point for us to decide. The testatrix, in the disposition of her property, had a right to direct the manner in which it should be applied ; and, if not inconsistent with the rules of law, her intention must be executed. In applying it to the purposes mentioned in the will, her intention was certainly humane and benevolent. The propagation of the Christian religion, whether among our own citizens or the people of any other nation, is an object of the highest concern, and cannot be opposed to any general rule of law, or principle of public policy.
The second point made by the defendant’s counsel is, that the be quest is void for uncertainty. This is the principal question in the cause, and it has been fully and ingeniously argued by the counsel on *470 both sides ; and a great variety of cases have been cited, which bear upon the point.(1)
Without undertaking to comment on the numerous authorities referred to, I shall give the opinion of the Court, as to what clearly appears to be the result of them, as applicable to this part of the case.
It is very manifest that the legacy is not given to the plaintiffs for their own use and benefit, but in trust for the use of others ; and it is said, on the part of the defendant, that the trust, or the persons who are entitled to the benefit of it, as cestui que trust, are altogether uncertain. If this be so, the bequest is undoubtedly void ; for it was not the intention of the testatrix that the plaintiffs should hold it for their own use.
It then becomes necessary to inquire, who are the persons to whose use the plaintiffs claim the legacy under the will of the testatrix ? They are not described by their proper names, nor by the [*541] name of any corporate body ; but they * are called “ The American Board of Commissioners for Foreign Missions, and their Associates.” The persons who, at the time of executing the will, constituted that board and their associates, if they can be ascertained, are the persons for whose use the legacy was intended ; not for their personal or individual benefit, but as trustees to apply the proceeds of it to the purposes of the board, and to promote the pious objects for which it was established.
It is not necessary that a legatee be named in the will. If he is otherwise clearly described, it is sufficient.(2) Cases of this sort very frequently occur ; as, where a legacy is given to the children of a particular person, or to the wife, or to any other relative who is clearly designated ; and in various other instances, where a description of the person is substituted for the name. If the persons, who constituted “ The American Board of Foreign Missions,” are certain, and known by that description, we then have as much certainty with regard to the persons to whom the plaintiffs are to pay over the interest and income of the legacy, as if they had been expressly named in the will. For this, we must recur to the facts agreed by the parties ; and by them it is admitted that such a board, consisting of nine persons, was in being, and known to the testatrix at the time of making her will; and that the members of the board are annually chosen by the general association of Congregational ministers in Massachusetts proper.
But, as the members of the board are elected annually, it is still *471 said that they are uncertain, and incompetent to take under this bequest ; and that it is also uncertain who were intended by the word associates; that it must either include all the ministers of the various associations in Massachusetts, or the delegates to the association ; either of which will be too vague and uncertain.
The first part of this objection is answered by a recurrence to the words of the will. The persons who then, at the time of making the will, constituted the board, are the persons designated to receive the income of the legacy ; * and any subsequent [*542 J change of the members of the board cannot affect the validity of the bequest. We do not see any propriety in giving to the word associates the meaning which the defendant’s counsel has affixed to it; nor do we think that the testatrix intended it should be so understood. It is difficult to find, in the manner in which it is here used, that it has any meaning ; and, if it has not, or is absurd, or repugnant to the clear intention of the testatrix manifested in other parts of the will, it may be rejected as surplusage.(3) At most, it is only an inaccuracy in the description of the persons, who are, nevertheless, sufficiently certain ; and which does not go to defeat the legacy.(4) Rejecting, then, the word associates, as mere surplusage, and considering the members of the board of commissioners, at the time of making the will, as the persons intended by the testatrix, all difficulty with respect to the uncertainty of the persons who stand in the relation of cestui que trust of the plaintiffs is removed.
As the Board of Commissioners do not, however, take the legacy to their own personal use and benefit, but are to apply the income of it to charitable and pious uses ; it is said, in the argument, that they are not to be considered as the cestui que trust, who are still more uncertain ; they being the various persons in foreign countries, who, it was intended, should receive the benefit of the religious instruction furnished by the bounty of the testatrix.
In donations to trustees for the support of schools, or other charitable purposes, it does not seem to be necessary that there should be any particular or certain persons designated, who were strictly cestui que trust in the common use of the term. By the will, in this case. The American Board of Commissioners for Foreign Missions are made to stand in that relation to the plaintiffs. They are to receive the income of the legacy, and apply it to the pious and charitable purposes of the board, in furnishing the means of religious instruction, according to the rules of their association. In trusts of this nature, the individuals who are ultimately to be benefited are * always uncertain. All the certainty required is, a [*543] *472 general description or limitation, not a particular description of the individuals. On this ground, therefore, we do not perceive any more difficulty in giving effect to the bequest, than exists in all cases of donations to charitable uses ; whether given to trustees directly, or in trust for other trustees, to be expended in promoting the objects for which they are given.
The object of this bequest is, to promote the knowledge of Christianity among the heathen in foreign countries, by sending out missionaries to preach to them and instruct them. The ultimate object of the bequest, and the persons for whose benefit it was intended, are not more indefinite than they are in a great number of cases to be found in the books, in which the trusts have been adjudged to be good. A bequest in trust for the advancement of the Christian religion among the infidels in North America,(5) a trust for the benefit of poor clergymen,(6) to a lying-in hospital,(7) to the poor inhabitants of St. Leonard,(8) to poor Dissenting ministers in any county.(9) In all these, and many other similar cases, it has been determined that the trusts were effectual and valid.
In the case of Thelusson vs. Woodford,(10) it is said that the Court is bound to carry the will into effect, if they can see a general intention consistent with the rules of law, even if the particular mode or manner pointed out by the testator is illegal. Powell, in his treatise on Devises [page 421], says that a devise is never construed absolutely void for uncertainty, but from necessity; if it be possible to reduce it to a certainty, the devise is good. And he cites the case of Ongley vs. Peale,(11) in support of the position. In the case of Christ’s Church College, Cambridge,(12) it is adopted as a principle, on which that case was determined, that the- Court of Chancery will aid a defective conveyance to legal charitable uses.
On these grounds we are satisfied that there is not so much uncertainty, as to the persons who are to take this legacy [*544] *as the cestui que trust of the plaintiffs, or as to the ultimate object of the bequest, as to render the bequest on that account void. But, according to the principles adopted in the English courts, we are clearly of opinion that the trust is well created by the will, and that it is valid and effectual.†
*473 But it is further contended on the part of the defendant, that such a bequest must be void in this Commonwealth, because we have no court of chancery, to enforce the execution of a trust.
We do not think it necessary for the Court, in this case, to inquire what is the remedy, or whether there be any, in case the trustees should be unfaithful in the discharge of their trust. This legacy is given to the plaintiffs on the special trust and confidence expressed it? the bequest; and confiding in their integrity, that they will dispose of the proceeds of it according to the directions of the testatrix, and in pursuance of her pious and benevolent intentions. They are persons competent to take as legatees ; and the legacy is legally vested in them. It is not for a court of law to devest a legal estate, because there may be, at some future time, a failure in the execution of an equitable trust, for which it is uncertain whether there be any adequate remedy.
In the argument, many instances were referred to by the counsel for the plaintiffs, in which the legislature of the Commonwealth, by granting acts of incorporation, has lent its aid to carry into more effectual execution trusts designed for charitable uses, and for other objects beneficial to the public ; and.it was contended on the part of the plaintiffs, that the legislature, in some cases of that description, may lawfully exercise the powers of a court of chancery.
But it is unnecessary to give any opinion as to the legal effects of such legislative acts ; as the decision of this case will not be affected by any consideration of that question. It has undoubtedly been a practice, as well under the colonial charters as since the adoption of the present Constitution, for the legislature to create corporations, and to invest * them with certain powers, to [*545] enable them better to manage donations to charitable and other public uses. And as such trusts in England are under the particular care of the King, as parens patriae, and are regulated by the chancellor, who is called the keeper of the King’s conscience ; in the absence of a court of chancery in this Commonwealth, there seems to be good reason for the legislature to give such beneficial aid to charitable trusts, when it does not interfere with the just and equitable rights of individuals.†
It is also contended for the defendant, that this legacy is within the provincial statute of 28 Geo. 2, commonly called the statute of mortmain, and therefore void.
But we think this objection cannot prevail. All the provisions and restrictions contained in that act manifestly related to gifts and devises, made to such bodies politic as were created by the act *474 itself; which were Episcopal and other Protestant churches Donations or bequests to any other persons or corporate bodies cannot, by any reasonable construction, be brought within the meaning of the act.
It is not, however-, very material now to settle the construction of that statute ; as we are fully satisfied that it is virtually repealed by the subsequent statute of 1785, c. 51. A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law as well as in reason and common sense, operate to repeal the former ; according to the case of The King vs. Cator,(13) in which it was decided that a former statute, inflicting a penalty of £100, and three months’ imprisonment, on persons enticing away artificers, was virtually repealed by a subsequent statute, inflicting £500. penalty, and twelve months’ imprisonment for the same - offence. The same principle was adopted in the case of The King vs. Davis.(14) All the subject-matter of the act of 28 Geo. 2 is contained in the statute of 1785. A part only of its restrictions and limitations, in the second section, is omitted in the latter ; and it is very obvious, by comparing [*546] them, *that the legislature considered the latter as a complete substitute and repeal of the former.
It being clearly the opinion of those members of the Court who sit in this cause,† that none of the objections, which- have been made, are sufficient to defeat the bequest to the plaintiffs ; according to the agreement of the parties, judgment is to be entered according to the verdict.

 2 Bro. Ch. Ca. 388. — Thomas vs. Thomas, 6 D. & E. 67. — 3 Ves., Jun., 402.— 7 D. & E. 138. — Plowd. 25. — Roberts on Wills, 233 — 1 W. Black. 91. — 9 Mass Rep. 419. — Ibid. 294.

 2 P. Will. 141. — Powell on Devises, 337

 3 Ves., Jun., 320. —2 Ves. 564.

 1 Ves., Jun., 266. — 2 P. Will 141.—2 Ves., Jun., 580.

 3 Brown's Cha. Rep. 171.

 Ibid., 517.

 Ibid., 12.

 Ambler, 422.

 Ibid., 524.

 4 Ves.,Jun., 329.

 2 L. Raym. 1312.

 1 W. Black. 90.

 Vide Inglis vs. The Trustees of tke Sailors' Snug Harbour, 3 Peters's S. C. R. 99 — 2 John's Ch. Rep. 384, 389. — Jackson vs. Hartwell, 8 Johns. 422. —First Parish, Sutton, vs. Cole, 3 Pick. 232. — 3 Binn., app. 626. — Baptist Association vs. Hart's Ex'rs 4 Wheat. 31. — 3 Peters's S. C. R. 481.— 4 Wheat, app. 3 - 23. —M'Cartee vs. The Orphan Asylum Society, 9 Cowen, 437. — Jackson vs. Hammond, 2 Cain. C. E. 337.— Kent Comm., vol 4, p. 495. — Whitman vs. Lex, 17 Serg. & Rawle, 88. —Attorney-General vs. Mayor of Dublin, 1 Bingh. 347. — Daskiell vs. Attorney-General, 5 H. & l 392.

 [Rev. Stat., Chap 81, § 8. “ The Supreme Judicial Court shall have power to hear and determine in equity all suits and proceedings for enforcing and regulating the execution of trusts.” — Ed.]

 4 Burr. 2026.

 1 Leach’s Cases, 306.

 Judges Jackson and Putnam, having been, while at the bar, retained in this cas# and that next following, did not sit in the hearing or adjudication thereof.