## DETERMINED IN THE

# SUPREME COURT

### OF THE

# STATE OF NEVADA,

## APRIL TERM, 1871.

---

## GUY THORPE *v.* JERRY SCHOOLING.

STATE STAMP DUTIES. The schedule of stamp duties adopted in 1871 as part of the amendment to Section 126 of the general revenue act (Stats. 1871, 142) supersedes and abrogates all others, and is the only one in force.

REPEAL OF STAMP DUTY SCHEDULE OF 1866. The schedule of stamp duties contained in the Act of 1866, (Stats. 1866, 177) was entirely repealed by the operation of the new Act of 1871, (Stats. 1871, 142) though not expressly referred to therein.

CONSTRUCTION OF STATUTES—LEGISLATIVE INTENT. The intention of the legislature controls the courts, not only in the construction of an act, but also in determining whether a former law is repealed or not; and when such intention is manifest it is to be carried out, no matter how awkwardly expressed or indicated.

REPEAL OF STATUTE BY REVISION OF SUBJECT MATTER. A new statute, revising the whole subject matter of a former law, repeals it, though containing no express words to that effect.

NO STAMPS TO BANK CHECKS. State stamp duties on bank checks were abrogated by operation of the Act of March 4th, 1871.

This was an application to the Supreme Court for a writ of mandamus requiring Schooling, as treasurer of state, to furnish, on

tender of the price, six stamped bank checks, issued under the state revenue Act of 1865, and in accordance with the schedule of stamp duties therein contained, as amended in 1866. The Treasurer declined and refused to furnish, on the ground that the Act of March 4th, 1871, (Stats. 1871, 142) amending the revenue laws, repealed that portion of them which had required the sale or affixing of a state revenue stamp to a bank check.

*A. C. Ellis,* for Relator.

*L. A. Buckner,* Attorney General, for Defendant.

By the Court, Lewis, C. J.:

The question to be determined in this case is, whether an amendment of certain sections of the revenue Act of 1865, and the adoption of a new schedule of stamp duties, operate as a repeal of the old schedule ; or whether both are to be upheld, so far as they do not directly conflict with each other. The question is raised by this state of facts: In the year 1865, the legislature enacted a general revenue law, among the various divisions of which was one entitled " Stamp Tax," the first section of which was Section 126 of the act, and reads thus : " On and after the first Monday of May, in the year of our Lord one thousand eight hundred and sixty-five, there shall be levied, collected, and paid, in gold coin of the United States, or in foreign coin, at the valuation fixed by the laws of the United States, for and in respect of the several instruments, matters and things mentioned and described in the schedule hereunto annexed, or for and in respect of the vellum, parchment, or paper upon which such instrument, matters or things, or any of them, shall be written or printed, by any person or persons, or party who shall make, sign, or issue. the same, or for whose use or benefit the same shall be made, signed or issued, the several duties or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in said schedule."

Following Section 139 of the act, (which is the last section touching stamp duties) comes a division entitled " Schedule Stamp Duty." In the year 1866, this last section was amended ; and with it, as if it were a part of that section, the schedule was also

amended in some particulars. In the present year (A. D. 1871) the legislature amended several sections of the general law of 1865 —among others, Section 126, above quoted—making, however, no material alteration, except that a new schedule of stamp duties is attached to and made a part of it. In this last act, no reference whatever is made to the schedule which had been adopted apparently as a part of Section 139 by the amendments of 1866. The schedule last adopted is substantially like that of 1866. Some few matters formerly requiring stamps are omitted, and the arrangement is somewhat different. However, on the whole there is but little change.

The question thus presents itself, whether the schedule last adopted and made a part of Section 126 supersedes that of 1866, or whether both are to be maintained so far as they do not conflict.

Our conclusion is, that the last schedule abrogates all others, and is the only one now in force. We are conducted to this result in this wise : The intention of the legislature controls the courts, not only in the construction of an act, but also in determining whether a former law is repealed or not. Whatever that body manifestly intended is to be received by the courts as having been done by it, provided it has in some manner, no matter how awkwardly, indicated or expressed that intention.

If therefore, it be clearly apparent that it intended to abrogate a former law, no matter whether that intimation be expressly stated or not, it must be carried out. This is in no manner adverse to the rule always acted on, that the later statute does not by implication repeal a former touching the same subject matter, where they can both be supported. If there be a repugnancy between them so that both cannot be enforced, it is presumed the legislature intended that the last act should prevail, that being the last expression of its will; and that by passing an act altogether repugnant to one already existing, it intended to repeal the former. So it is the intention of the legislature which controls in such cases, the repugnancy being the means only whereby it is ascertained. But the intention ascertained by any other means is equally cogent in controlling the courts. True, repeals by implication are not favored; and if it be not perfectly manifest, either by

irreconcilable repugnancy, or by some other means equally indicating the legislative intention to abrogate a former law, both must be maintained.   The intention, if perfectly clear, however, must control, however it may be expressed or manifested.   It is upon this principle, evidently, that it is held that a statute revising the whole subject matter of a former law repeals it.   So it was held in the case of *Bartlett et als.* v. *King, Executor*, 12 Mass. 537. In that case, an exceedingly useful statute, passed in 1754, concerning donations and bequests to pious and charitable uses, was held repealed by an act passed in 1785 upon the same subject matter; which, however, omitted to reënact some of its provisions. "A subsequent statute," said Dewey, J., "revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former."

Can there be any doubt whatever, upon an inspection of the laws under consideration, that the legislature of Nevada intended to abrogate all former schedules, and to make that adopted by it in 1871 the only one thereafter to be in force ?   Clearly not.   Here the whole subject matter of the former schedules is legislated upon in that adopted in 1871.   And furthermore, can it be supposed that the legislature intended to have two schedules of stamp duties in the same act, one embracing nearly everything embodied in the other ?   We cannot persuade ourselves that anything so manifestly useless and absurd was intended; and if not, then it must be held that the last schedule was intended to abrogate or take the place of all former ones.

Again, Section 126 is the only provision of law that we have been able to find which directly imposes the stamp duties enumerated in the schedule.   But that section, as amended in 1871, only imposes such duties upon the several instruments, matters and things mentioned and described in the schedule thereunto annexed; and then follows the schedule as amended, forming a part of the section itself.   Now, what is more obvious than that stamp duties are imposed only on the instruments mentioned in the schedule attached to or made a part of that section ?   Only one schedule is

mentioned—the word is not employed in the plural number. The question then arises, which schedule is referred to ; that of 1866, or the one adopted as amended in 1871? Unquestionably, the latter. If so, then there is no law whatever imposing stamp duties on any instruments except those mentioned in the latter schedule.

We are satisfied the legislature intended that the schedule last adopted should supersede all previous ones. Upon well settled rules of construction, therefore, that intention must prevail, and control the courts.

The writ must be denied. It is so ordered.

GARBER, J., did not participate in the foregoing decision.